NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

O.R. (a student),

    Plaintiff,

v.

Gerri HUTNER, et al.,

    Defendants.

Civ. No. 10-1711

OPINION

THOMPSON, U.S.D.J.

### I.    INTRODUCTION

This matter has come before the Court upon the Motions for Written Opinion filed by Plaintiff O.R. (Docket Entry Nos. 141, 143, 146). Defendants oppose the motions. (Docket Entry No. 149). The Court has decided these matters upon consideration of the parties' written submissions and without oral argument, pursuant to Federal Rule of Civil Procedure 78(b). For the following reasons, the Court vacates the Orders dated April 19, 2013, and May 15, 2013, and grants Plaintiff's Motions for Written Opinion.

### II.    BACKGROUND

The Court assumes the parties' familiarity with the underlying factual and procedural history of this case and briefly recites those facts relevant to the Court's analysis. In March 2004, Plaintiff, a minor, was found in possession of a knife at school. The West Windsor Plainsboro School District ("School District") alerted the local police department of the incident,

1

a juvenile complaint was lodged against Plaintiff in the Family Part of the New Jersey Superior Court, and Plaintiff was adjudicated delinquent and suspended for ten days. Plaintiff's father appealed the suspension both judicially to the Appellate Division and administratively with the New Jersey Department of Education. The Commissioner of Education dismissed the petition in 2006 and the Appellate Division affirmed the decision of the Family Part in 2007.

In September 2006, after first filing and then withdrawing a Charge of Discrimination with the New Jersey Division on Civil Rights ("DCR Action"), Plaintiff initiated a state court action against the School District and its employees. In that case, *John Doe v. West Windsor Plainsboro Reg'l Sch. Dist.*, MER-L-2316-06 ("John Doe Action"), Plaintiff claimed violations of his civil rights. He primarily alleged that he suffered disparate treatment when the knife incident was referred to the police because similarly situated Caucasian students were not referred to the police and received shorter suspensions.

In the course of litigating the John Doe Action, Plaintiff submitted several requests for public records under New Jersey's Open Public Records Act ("OPRA"). These requests led to at least three additional lawsuits in the Law Division of the New Jersey Superior Court, *O.R. v. Kneiwel*, MER-L-2293-07, *O.R. v. Gibbs-Nini*, MER-L-2380-07, and *Owoh v. West Windsor Plainsboro Reg'l Sch. Dist.*, MER-L-2686-06, in which Plaintiff alleged that the School District and its employees had failed to provide proper access to records in violation of OPRA and had violated his common law right of access to the courts.

The OPRA and common law right of access claims were resolved in a series of orders issued by Judge Feinberg between May 5, 2008, and July 11, 2008. The complaint in the John Doe Action was dismissed in August 2008 by Judge Sumners upon the School District's motion for summary judgment for failure to prove a prima facie case of disparate treatment. The

Appellate Division consolidated the four resulting appeals and issued an opinion affirming all four judgments on March 17, 2010.

While that appeal was pending, however, Plaintiff filed yet another complaint in the New Jersey Superior Court, *O.R. v. Rudnick*, MER-L-10-08, against the School District and a number of its employees. In this case, Plaintiff brought three counts for failure to comply with OPRA. Upon the defendants' motion, Judge Feinberg granted summary judgment on the first two counts and ordered the limited disclosure of redacted records in response to the third count. After Plaintiff moved for reconsideration, Judge Feinberg issued a detailed opinion affirming the prior ruling, finding that the defendants had complied with the order to provide certain limited redacted records, and dismissing the complaint.

On September 2, 2009, Plaintiff commenced a new civil action in the New Jersey Superior Court, *O.R. v. Cave*, MER-L-2266-09, alleging that the School District and its employees engaged in fraudulent concealment and intentional spoliation of evidence and records. The defendants then moved for summary judgment and Judge Pereksta granted the motion.

On March 5, 2010, Plaintiff initiated this lawsuit in federal court. (Docket Entry No. 1). In the complaint ("Complaint"), Plaintiff alleged that Defendants' conduct in the underlying litigation violated (1) the Fourteenth Amendment's Due Process Clause by denying Plaintiff access to the courts; and (2) the Fourteenth Amendment and Title VI of the Civil Rights Act by treating Plaintiff, a minority, differently than Caucasian students. (*Id*.). On June 23, 2010, the Court dismissed the Complaint, concluding that (1) Plaintiff had not set forth prefiling conduct sufficient to state a claim under the Fourteenth Amendment Due Process Clause; (2) Plaintiff had not alleged a disparate treatment claim under the Fourteenth Amendment or the Civil Rights Act because he had provided insufficient allegations of similarly situated Caucasian students; and (3)

dismissal was appropriate under the principle of *res judicata* and the entire controversy doctrine. (Docket Entry No. 17). Although the Court subsequently re-opened the case to reflect that Plaintiff had served four additional defendants not originally named in the action, the Court denied reconsideration of the Court's ruling on the motion to dismiss and dismissed the Complaint as to the additional defendants in the same Order. (Docket Entry No. 53). Two subsequent motions to amend were each denied – the final time with prejudice. (Docket Entry Nos. 59, 69).

Plaintiff then made several motions to re-open the case, including a Motion for Reconsideration, (Docket Entry No. 71), Motion to Set Aside Judgment, (Docket Entry No. 88), Motion for Reconsideration or a Stay, (Docket Entry No. 95), and Motion to Stay and/or for Additional Factual Finding, (Docket Entry No. 108). Each motion was denied. (Docket Entry Nos. 80, 94, 106, 111).

During this time, the Court also found it necessary to sanction Plaintiff's attorney, Rotimi Owoh ("Owoh").[1] The Court first sanctioned Owoh on November 4, 2010, at the prompting of Defendants. (Docket Entry No. 70). The Court ordered him to pay Defendants attorneys' fees in the amount of $4,500, (*id*.), and the Third Circuit upheld the sanctions award on September 13, 2011, (Docket Entry No. 91). On January, 27, 2012, the Court imposed sanctions on Owoh once again in the amount of $4,500, as he continued to make frivolous, previously litigated arguments. (Docket Entry No. 111). On February, 8, 2013, however, the Third Circuit vacated this second sanctions award for failure to comply with the notice requirements of Rule 11. (Docket Entry No. 115). As Plaintiff had yet to pay the initial sanctions award, the Court then ordered Owoh to

---

[1] Other courts have also imposed sanctions on Owoh. Judge Jacobson imposed a total of $10,364.70 in sanctions in the case *O.R. v. Harrison, et al*., MER-L-426-12. (Docket Entry No. 119, Attach. 1 at ¶ 3). Additionally, in *O.R. v. Cave, et al.*, MER-L-2256-09, Judge Pereksta awarded $21,635.00 in frivolous pleading sanctions against Owoh. (*Id*. at ¶ 4).

4

show cause why he should not be held in civil contempt. (Docket Entry No. 128). Owoh contended that he should not be required to pay sanctions because, according to him, Defendants' counsel, Eric Harrison ("Harrison") had engaged in fraud. (Docket Entry No. 132). After reviewing Owoh's arguments, the Court held Owoh in civil contempt for failing to pay the initial sanctions award. (Docket Entry No. 137). The Court declined, however, to impose additional sanctions at that time. (*Id.*).

On February 18, 2013, Plaintiff again moved to set aside the judgment in this case. (Docket Entry Nos. 116, 117). Plaintiff's motion was premised on his allegations that Harrison had engaged in fraud. (*Id.*). Specifically, Plaintiff claimed that Harrison fraudulently created 12 student disciplinary reports and used those reports to obtain a favorable ruling on a motion for summary judgment in one of the state court actions. (*See id.*). Plaintiff also filed a motion seeking discovery of metadata that he claimed would further demonstrate that the student disciplinary reports were fraudulently created. (Docket Entry No. 121).

After conducting oral argument in an attempt to clarify Plaintiff's arguments, (Docket Entry No. 125), the Court denied Plaintiff's motion to set aside the judgment, explaining that "Plaintiff ha[d] not met his burden of showing that [Harrison] fraudulently created the student discipline reports," (Docket Entry No. 126). The Court noted that Plaintiff's fraud allegations arose from Harrison's purported inability to produce the 12 student disciplinary reports *in screen shot format*. (*Id.*). To support this claim that the 12 student disciplinary reports were missing, Plaintiff pointed to the example of J.P., a student suspended for a scissors incident. (*Id.*). Plaintiff alleged that the School District could not produce a copy of that student disciplinary report – one of the 12 purportedly missing student disciplinary reports – even after Plaintiff had obtained consent from J.P.'s parent to release the report. (*Id.*). The School District, however,

5

had classified the scissors incident a "threat" and Harrison only had copies of student disciplinary reports that involved "weapons possession" or "violence" *in screen shot format*. (*Id.*). Harrison had, therefore, merely been unable to provide J.P.'s student disciplinary report *in screen shot format*, and there appeared to be no evidence to support Plaintiff's allegation that records of the student disciplinary report were missing altogether. (*Id.*). On these facts, the Court found that Plaintiff had not demonstrated fraud and denied Plaintiff's motion accordingly. (*Id.*).

Plaintiff moved for reconsideration on March 10, 2013, (Docket Entry No. 129), and appealed the Court's decision to the Third Circuit on April 16, 2013, (Docket Entry No. 138). In his motion for reconsideration, Plaintiff argued that the Court had failed to understand his arguments and sought to clarify them. (*Id.*). On April 17, 2013, the Court issued an Order denying Plaintiff's motion for reconsideration. (Docket Entry No. 141). As Plaintiff had made "essentially the same arguments" and sought only to clarify arguments previously made, the Court did not issue an accompanying opinion, concluding in the Order that Plaintiff had still not met his heavy burden under Federal Rule of Civil Procedure 60. (*Id.*).

The following day, Plaintiff filed a Motion for a Written Opinion. (Docket Entry No. 141). The Court denied the motion, concluding that it lacked jurisdiction in light of Plaintiff's pending appeal to the Third Circuit. (Docket Entry No. 142). Plaintiff then appealed that decision, (Docket Entry No. 144), and filed renewed motions for factual findings, (Docket Entry Nos. 143, 146), which the Court also denied, (Docket Entry No. 147). On July 25, 2013, the Third Circuit granted Plaintiff's Motion to Hold Appeal in Abeyance and to Grant Jurisdiction to the District Court to Resolve Motions Pending Before the District Court. (Docket Entry No. 148). In the Order, the Third Circuit directed the District Court to resolve Plaintiff's "motion

[for factual findings] at docket entry no. 143." (*Id*.).  In accordance with the Third Circuit's Order, the Court now issues this opinion explaining its factual findings and legal reasoning.

### III.  DISCUSSION

In his motions for written opinion, Plaintiff asks the Court to issue written findings concerning four questions which Plaintiff claims are necessary for the Third Circuit to decide whether the Court properly denied Plaintiff's motion to set aside the judgment.  (Docket Entry Nos. 143, 150, 151).  Specifically, Plaintiff seeks answers to these questions:

> **QUESTION 1**:  Why was and is the school district NOT able to locate JPD's SCREEN SHOT (discipline report) in ANY of the school district's computer systems to include the SASI system? . . .
> **QUESTION 2**:  Why was and is the school district NOT able to locate ANY of the twelve (12) SCREEN SHOTS (discipline reports) that were filed in court by Mr. Harrison in the SASI computer system? . . .
> **QUESTION 3**:  Whether PRINTING a hard copy of a discipline report from the SASI computer system could "delete" the "saved" discipline report file from the SASI database?  In other words, whether printing a discipline report from the SASI system could cause the "saved" discipline report file to disappear or to be deleted from the SASI computer database?
> **QUESTION 4**: Whether making a "handwritten note" on a hard copy of a screen shot (discipline report) that was PRINTED from the SASI computer system could "delete" the "saved" discipline report file from the SASI database?  In other words, whether making a "handwritten note on a hard copy of a discipline report that was PRINTED from the SASI computer system could cause the "saved" discipline report file to disappear or to be deleted from the SASI computer database?

(Docket Entry Nos. 143, 150).

In demanding answers to these four questions, however, Plaintiff seeks to shift the Court's attention from the real issue before the Court.  Namely, Plaintiff seeks to distract from the heavy burden he must overcome to prevail under Federal Rule of Procedure 60.  Under Rule 60, a court may relieve a party from a final judgment or order on grounds of fraud but only if such fraud is shown by clear and convincing evidence.  FED. R. CIV. P. 60(b)(2)-(3); *Brown v. Pennsylvania R.R. Co.*, 282 F.2d 522, 527 (3d Cir. 1960).  Such relief is "extraordinary" and

should be granted only in exceptional circumstances. *Boughner v. Sec'y of Health, Educ., & Welfare*, 572 F.2d 976, 977 (2d Cir. 1978).

As a preliminary matter, Owoh's briefs in support of his Motion to Set Aside the Judgment and Motion for Reconsideration are confusing and difficult to follow. For this reason alone, the Court could have denied Plaintiff's motions. *See DeShields v. Int'l Resort Props., Ltd.*, 463 F. App'x 117, 120 (citation omitted). Instead, the Court sought to understand Plaintiff's arguments and address them to the best of its ability. Having conducted another extensive review of Plaintiff's numerous filings concerning the issue of fraud, the Court is not persuaded that Plaintiff is entitled to the extraordinary relief afforded by Rule 60, as he has not shown by clear and convincing evidence that Harrison engaged in fraud. To demonstrate how Plaintiff has failed to meet his burden under Rule 60, the Court now attempts to explain Plaintiff's fraud allegations.

Plaintiff claims that Harrison fraudulently created 12 student disciplinary reports and used them to secure favorable judgments in Plaintiff's state court actions. (Docket Entry No. 116). The 12 student disciplinary reports first appeared in the DCR Action and the John Doe Action. (*See id.* at 2). In the course of defending against Plaintiff's disparate treatment claims in those cases, Harrison had obtained hard copies of screen shots of the 12 student disciplinary reports from the School District on February 9, 2006. (Docket Entry No. 119, Attach. 1 at ¶ 11). An administrator for the School District had handwritten on one of the reports involving a student named J.P. and a scissors incident: "I have included the write-up on the student that [Owoh] indicates I treated differently. I suspended this student for "Threats" made toward another student, not "possession of a weapon" as the other infractions indicate." (*Id.*). Harrison submitted the redacted screen shot versions of those 12 student disciplinary reports to the New

8

Jersey Division on Civil Rights in the DCR Action on February 28, 2006.  (*Id*. at ¶¶ 9, 10).  Harrison again submitted those documents in the John Doe Action when moving for summary judgment on January 8, 2008.  (*Id*. at ¶ 13).

Meanwhile, Plaintiff had initiated the state court actions concerning the School District's handling of Plaintiff's OPRA requests.  Plaintiff complained that the School District was not responsive to his discovery demands because they did not provide the student disciplinary reports in the same screen shot format used in the DCR Action and the John Doe Action.  (*Id*. at ¶ 15).  In an effort to end the dispute, Defendants agreed to provide the student disciplinary reports in screen shot format.  (*Id*. at ¶ 16).  Harrison then obtained from Rick Cave ("Cave"), the School District's Information Technology Director, screen shots of approximately 425 student discipline reports involving incidents classified as "weapons possession" or "violence."  (*Id*. at ¶ 17).  Mr. Harrison then converted the screen shots he had received to PDF format and redacted them to protect students' identities.  (*Id*. at ¶ 18).  These redacted documents were submitted to Judge Feinberg in the OPRA litigation.  (*Id*.; Docket Entry No. 119, Attachs. 4-5).

Plaintiff, however, was apparently not satisfied and persisted in his efforts to obtain unredacted copies of the 12 original screen shots.  When the School District refused to disclose them for privacy reasons, Plaintiff obtained the written consent of the mother of J.P., the student whose scissors incident had been classified as a "threat" in the School District's computer system.  (Docket Entry No. 116; Docket Entry No. 119, Attach. 2 at 64).  When this written consent was sent to Harrison, he reviewed the 425 GIF files he had been given and determined that because that incident involved a "threat" rather than "violence" or "weapons possession," he did not have an unredacted copy.[2]  (Docket Entry No. 116 at 4-5).  He explained in a

---

[2] Specifically, Harrison said:

9

certification that Plaintiff "appears [to be] seeking more than just access to 'records'" but instead seeks "screen shots" that "were created for purposes of his prior litigation . . . ." (Docket Entry No. 116, Attach. 3). He explained that those "documents would not exist but for his prior litigation" and that "records with accompanying metadata which would demonstrate the date and time on which particular data was entered into the [School District's computer] system" does not exist. (*Id.*).

Plaintiff would have the Court read these statements as an admission that the School District cannot locate any record of the 12 student disciplinary reports in its computer system; however, Harrison's statements are clearly not so broad. Instead, Harrison has merely explained that he does not possess an unredacted, screen shot version of the student disciplinary report related to J.P.'s scissors incident because it was classified as a "threat," not a "weapon possession" or "violence" incident, and therefore, was not included in the set of 425 unredacted GIF files provided to Harrison by Cave. Therefore, Plaintiff has not shown that the 12 student disciplinary reports are missing, much less that Harrison engaged in any act of fraud. Accordingly, the Court denied Plaintiff's Motion to Set Aside the Judgment, Motion for Discovery, and Motion for Reconsideration.

---

> I have reviewed all of the GIF Files provided to me by Rick Cave via email on February 5, 2008. I see that I was mistaken in my letter of yesterday when I described an 'unredacted GIF file containing this data, which I received within the same set of GIF files from Mr. Cave on February 5, 2008.' In fact, while the GIFs provided by Mr. Cave included two screen shots relating to this student, neither corresponded to the 'scissors' incident of February 11, 2004 . . . .

(Docket Entry No. 116 at 4-5).

## IV.     CONCLUSION

For the foregoing reasons, Plaintiff's Motions for Written Opinion are granted. This Opinion in no way alters or amends, however, this Court's previous rulings on Plaintiff's Motion to Set Aside the Judgment, Motion for Discovery, or Motion for Reconsideration. An appropriate order will follow.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.

Date:   September 3, 2013